## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AL GOULARTE,<br><br>Plaintiff,<br><br>v.<br><br>FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, ERIKA MEINHARDT, MARK D. LINEHAN, and C. MALCOLM HOLLAND,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Al Goularte ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Foley Trasimene Acquisition Corp. II ("Foley" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Foley, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between the Company, Paysafe Group Holdings Limited ("PGHL"), Paysafe Limited ("Paysafe"), incorporated by PGHL, and Paysafe Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Paysafe ("Proposed Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On December 7, 2020, Foley entered into an agreement and plan of merger with PGHL, Paysafe, and Merger Sub ("Merger Agreement"), whereby Merger Sub will merge with and into Foley, with Foley surviving as an indirect subsidiary of Paysafe.

3.      Upon consummation, the Proposed Transaction will reflect an implied pro forma enterprise value for PGHL of approximately $9 million ("Merger Consideration").

4.      On December 21, 2020, in order to convince Foley public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form F-4 Registration Statement ("Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the Paysafe financial projections for years 2024 through 2026 prepared by Foley management ("Paysafe Projections"); and (ii) the *Background of the Business Combination*.

6.      The Proposed Transaction is expected to close in the first half of 2021, so the special meeting of Foley's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed prior to the Shareholder Vote, so Foley's shareholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Foley shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Foley's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  In addition, Foley's transfer agent, Continental Stock Transfer & Trust Company is located in this District at 1 State Street, New York, NY 10004. Last, the Company's legal counsel in connection with the Proposed Transaction, Weil, Gotshal & Manges LLP is located in this District at 767 Fifth Avenue, New York, NY 10153.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

of Foley common stock.

12.     Defendant Foley is a public company incorporated under the laws of Delaware with principal executive offices located at 1701 Village Center Circle, Las Vegas, NV 89134.  Foley's common stock trades on the NYSE under the ticker symbol "BFT."

13.     Defendant William P. Foley, II is, and has been at all relevant times, a director of the Company, Founder, and Chairman of the Board.

14.     Defendant Richard N. Massey is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

15.     Defendant Erika Meinhardt is, and has been at all relevant times, a director of the Company.

16.     Defendant Mark D. Linehan is, and has been at all relevant times, a director of the Company.

17.     Defendant C. Malcolm Holland is, and has been at all relevant times, a director of the Company.

18.     The defendants identified in paragraphs 13 through 17 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## <u>SUBSTANTIVE ALLEGATIONS</u>

I.      **Background of the Company, PGHL, and the Proposed Transaction**

19.     Foley is a special purpose acquisition company (SPAC) whose business purpose is to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses in financial technology, or information and business services.

20.     PGHL is a leading integrated payments platform. Its core purpose is to enable

businesses and consumers to connect and transact seamlessly through industry-leading capabilities in payment processing, digital wallet, and online cash solutions. With over 20 years of online payment experience, an annualized transactional volume of over US $98 billion in 2019, and approximately 3,000 employees located in 12+ global locations, PGHL connects businesses and consumers across 70 payment types in over 40 currencies around the world. Delivered through an integrated platform, PGHL solutions are geared toward mobile-initiated transactions, real-time analytics and the convergence between brick-and-mortar and online payments.

21.     According to the December 7, 2020, joint press release announcing the Proposed Transaction:

### Foley Trasimene Acquisition Corp. II and Paysafe, A Leading Global Payments Provider Focused on Digital Commerce and iGaming, Announce Merger

<u>Las Vegas, NV and London, UK – December 7, 2020</u> – Foley Trasimene Acquisition Corp. II (NYSE: BFT, BFT WS) ("Foley Trasimene"), a special purpose acquisition company, and Paysafe Group Holdings Limited ("Paysafe"), a leading integrated payments platform, today announced that they have entered into a definitive agreement and plan of merger. Upon closing of the transaction, the newly combined company (the "Company") will operate as Paysafe and plans to list on the New York Stock Exchange (NYSE) under the symbol PSFE. The transaction reflects an implied pro-forma enterprise value for Paysafe of approximately $9 billion.

Paysafe is a leading integrated payments platform, with a two-sided consumer and merchant network, whose core purpose is to enable businesses and consumers around the world to connect and transact seamlessly through payment processing, digital wallet, and online cash solutions.

William P. Foley, II, Founder and Chairman of Foley Trasimene, stated, "Upon the formation and initial listing of Foley Trasimene, our team initiated a diligent and thorough search process to source an appropriate partner, with the goal to announce a partnership prior to year end. Thanks to the hard work of our team, we have reached this milestone with Paysafe as our ideal partner. Philip and the entire management team have positioned Paysafe to be a leading global payments platform. We believe we can further enhance Paysafe's growth trajectory through accelerated operational transformation and M&A, enabled by our de-levered balance sheet. Paysafe delivers a unique value proposition in large and high-growth markets, such as gaming and e-commerce, enabling the company to generate strong organic revenue growth and margin expansion. With a proven strategy and an

experienced management team and our newly formed partnership, we believe Paysafe has significant long-term growth potential."

Philip McHugh, CEO of Paysafe, stated, "Today's announcement begins an exciting new chapter in our company's history and we're excited about the partnership with Foley Trasimene, Blackstone and CVC. Today, more than ever, businesses and consumers need to connect and seamlessly transact via digital commerce.  This is what Paysafe does best through our industry-leading payment processing, digital wallet, and online cash solutions. This transaction will allow us to accelerate our growth opportunities across the business, particularly in fast growth sectors such as iGaming where we are the payments partner of choice."

Martin Brand, a Senior Managing Director at Blackstone, said, "Paysafe has built a leading global e-commerce payment platform under Philip's leadership. This investment, the largest ever common stock PIPE raised by a special-purpose acquisition company, de-levers the company and positions Paysafe for organic and inorganic future growth. Bill Foley has an exceptional track record of value creation in financial technology and will drive outstanding shareholder returns."

Peter Rutland, a Managing Partner at CVC, said, "Under Blackstone's and CVC's ownership the management team have transformed Paysafe into a leading global payments provider by investing in its technology, products and customer proposition.  We are looking forward to remaining significant shareholders alongside Foley Trasimene for the next stage of Paysafe's growth."

Stuart C. Harvey, Jr, Chairman of the Paysafe Board of Directors, stated, "Paysafe's blend of scale, vertical expertise, and broad suite of payment capabilities makes it incredibly well-positioned to continue its strong growth trajectory. In addition, this transaction provides Paysafe with even greater opportunity to strategically expand its innovative payment solutions, execute accretive M&A, and accelerate its growth initiatives. We look forward to seeing Paysafe's continued success and growth as a public company."

(Emphasis in original).

## II.   The Registration Statement Omits Material Information

22.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, to ensure that it did not contain any material misrepresentations or omissions.  Therefore, the Registration Statement should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

23.     First, the Registration Statement fails to provide critical information regarding the Paysafe Projections.

24.     Defendants elected to include Adjusted EBITDA in the Paysafe Projections, while excluding net income ("Net Income projections"), despite the Registration Statement disclosing that net income was used to calculate Adjusted EBITDA. Registration Statement, 137.  By disclosing Adjusted EBITDA and withholding the Net Income projections, Defendants render the Paysafe Projections on page 137 of the Registration Statement materially incomplete and provide a misleading valuation picture of Paysafe.  Simply put, Net Income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

25.     In addition, the Registration Statement fails to disclose net cash flow in the Paysafe Projections ("Net Cash Flow projections"), despite the Registration Statement referencing Paysafe's net cash flow numerous times. *Id.* at 260-61.  Omission of the Net Cash Flow projections, while including Adjusted EBITDA renders the Paysafe Projections incomplete and misleading because, without the Net Cash Flow projections, the projection summaries provide a misleading overall valuation picture of Paysafe.  This is caused by significant differences between cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the Adjusted EBITDA projections that were included in the Registration Statement.

26.     Adjusted EBITDA metrics are not sufficient analogs for Net Cash Flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1]

27.     There are fundamental differences between cash flows and EBITDA.  EBITDA is not

---

[1]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").

a sufficient alternative to cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy." [2]  Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls.  EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understanding a company's value.[3]  As a result of these material differences between EBITDA and cash flow, experts recognize cash flow as a much more accurate measure when it comes to analyzing the expected performance of a company.

28.     Given these differences, Defendants must disclose the Net Cash Flow projections for Paysafe.

29.     Unlike poker where a player must conceal his unexposed cards, the object of a registration statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a registration statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the projections, but have omitted the Net Income projections and the Net Cash Flow projections.

---

[2]     Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.
[3]     Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/.

30.     Second, the Registration Statement fails to disclose material information concerning the *Background of the Business Combination*.

31.     The Registration Statement discloses that Foley selected RBC Capital Markets, LLC ("RBC") to serve as financial advisor in connection with the Proposed Transaction, yet the Registration Statement fails to disclose whether RBC received compensation for its role as financial advisor, and whether RBC rendered services for Foley and/or Paysafe and affiliates in the past. Registration Statement, 128.

32.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15

U.S.C. § 78n(a)(1).

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

37.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the Paysafe Projections; and (ii) the *Background of the Business Combination*.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

39.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the

Proposed Transaction; indeed, the Registration Statement states that the Board reviewed the financial data provided to them by Paysafe.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company and Paysafe's financial projections.

41.     Foley is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Foley within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Foley, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that

the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

53.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

54.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//


//

14

Dated: February 23, 2021

**MONTEVERDE & ASSOCIATES PC**

<u>/s/ Juan E. Monteverde</u>
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*